(68 App. Div. 209.)

WHITE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

DEATH OF SERVANT—NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.

Plaintiff's intestate was a flagman and track patrolman, and was provided with a shanty in which to stay after his patrol work was done. The shanty was blown into the river on a stormy night. The body of plaintiff's intestate was afterwards found in the river, but not in the house, which was also found. There was evidence that the violence of the storm might have blown a man into the river while patrolling the track, and an employé of the defendant testified that he saw a lantern on the track patrolled by intestate during the height of the storm. *Held* insufficient to show that intestate was blown into the river with the shanty, and that defendant's negligence in properly securing the shanty was the cause of defendant's death.

Appeal from trial term, Orange county.

Action by Mary White, as administratrix of William White, deceased, against the New York Central & Hudson River Railroad Company, for the wrongful killing of plaintiff's intestate. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Thomas Watts, for appellant.
Charles F. Brown, for respondent.

WILLARD BARTLETT, J. The plaintiff's husband, William White, was employed by the defendant as a flagman upon the West Shore Railroad in the vicinity of Storm King. In addition to his functions as a flagman, it was his duty to patrol the track, and see that it was kept clear from all obstructions to the trains. The defendant provided a shanty for the use of the flagmen at this point, in which they were accustomed to stay when their patrol work was done, and await the coming of the next train to be signaled. White left his home at Cornwall on the afternoon of December 4, 1898, to go to work as the night flagman at the Storm King flag station. There is no evidence that he was ever seen alive by anybody after his departure from Cornwall on that day. The night was a very stormy one, with heavy rain, and a strong wind from the south. On the following day the flagman's shanty at Storm King was found in the Hudson river. Nothing appears to have been seen or heard of White until July 25, 1899, when the corpse of a man was found in the Hudson river at West Point, at a point between two and three miles distant from the shanty. The flesh was so far removed from the face as to render it impossible to identify the person by means of his physical appearance; but the clothing on the body, and particularly the shoes, were sufficiently identified to warrant the inference that the corpse was that of the plaintiff's husband. The theory of the plaintiff's case was that the shanty at Storm King, which was provided for her husband's use as flagman, at all events at such times as he was not directly employed in the discharge of his duties, was insecurely fastened to the ground; and that, in consequence of the defendant's lack of care to affix it properly to the earth, it was blown into the

river by the violence of the storm, carrying the flagman with it. I think there was enough proof to sustain a finding that the shanty was not adequately secured to the ground, and that the defendant was chargeable with knowledge of this fact; but the fatal defect in the case for the plaintiff was the failure to show that this negligence, assuming it to have existed, was the cause of the flagman's death. There is no evidence whatever that he was in the shanty when the structure was blown into the river. Indeed, the fact that his body was not discovered in it or near it on the day after the storm rather tends to show that he was not carried with it into the river. On the other hand, there is proof which indicates that the violence of the wind on the night of the storm was such that it might well have sufficed to blow a man into the river while he was engaged in patrolling the track. One witness, who was in the employ of the defendant as a flagman at a point on the West Shore Railroad not far distant from Storm King, described the wind on the night of the storm when White disappeared as being so violent that he had to lean down against the track to keep himself from blowing over. The same witness testified that just before the wind was heaviest he saw a light from a lantern up on White's part of the track, which would indicate that White was outside the shanty, rather than in it, during the height of the gale. The rule invoked by the appellant that in a case where the complaint is dismissed the plaintiff is entitled to the most favorable inferences that can be drawn from the proof (Rehberg v. Mayor, etc., 91 N. Y. 141, 43 Am. Rep. 657) cannot be carried so far as to supply a lacking link in the chain of causation necessary to make out the defendant's liability. To allow the jury, upon the facts in this case, to find that the death of the plaintiff's intestate was due to the insecurity of the flagman's shanty at Storm King, would be to sanction a judgment founded not on legal evidence, but mere surmise, speculation, and guesswork. I think the learned trial judge was right in dismissing the complaint, and that the judgment should be affirmed.